Good morning, Your Honors. May it please the Court. My name is Carlos Cruz, and I represent the petitioners, Mr. Kazi, and family. I'd like to reserve two minutes for rebuttal before I begin. Your Honors, this Court should reverse the decision of the Board of Immigration Appeals affirming the denial of the petitioners' applications for political asylum and withholding of removal based on the following three reasons. First, the adverse credibility finding made by the immigration judge, which the Board attempted to reinforce, is not supported by substantial evidence. Second, the petitioners in this case suffered past persecution on account of political opinion and membership in a particular social group. Lastly, the government in this case has been unable to rebut the presumption of a well-founded fear of future persecution on account of the past persecution experienced by the petitioners. MS. GONZALES Do we get there if we were to grant on the basis that the adverse credibility decision was not supported by substantial evidence? Aren't we required to remand to the BIA, to remand again to the IJ for those findings? MR. KAZI Yes, Your Honor. In fact, the Supreme Court in Inez v. Ventura so held that this Court should reverse to the Board to determine whether or not changed country conditions would impact the future or the well-founded fear of future persecution in this case. The reason I raise this issue is because government counsel has argued that the Court should apply a seven-year-old State Department report where the State Department has certain positions regarding individuals like the respondent. But in this case, we urge the Court to remand the case pursuant to the Supreme Court's decision. In this Court's decision in Hassan v. Ashcroft, the Court held that that would be the most appropriate remedy in order to give petitioners a full opportunity at a fair and individual hearing. And in this case, Judge, I believe that we must first address the issue of credibility. And the immigration judge gave three reasons why he believed that the petitioner, the lead petitioner in this case, had not been credible. First, he states that the petitioner was inconsistent about where and how many times the petitioner had been sought after by the man who committed a murder at a party meeting that he attended. The petitioner was never inconsistent about the number of times that he was sought after. In this case, he repeated from the beginning to the conclusion of his testimony that he was sought after many times. The real concern for the judge here was a misunderstanding about whether or not these same men came to look for him at his father-in-law's house. And that's where the issue lies with regards to this particular factor. The petitioner testified that these men came to look for him at his father's house. And there is direct testimony in the record regarding that. But when asked very specifically if these men had come to look for him at his father-in-law's house, his testimony from the beginning to the end of his testimony was that they had not, that he was in constant hiding at that location, and he was completely underground. So that reason, that factor cited by the immigration judge would not provide a substantial basis on which to uphold the adverse credibility finding. Second, the immigration judge relies on a letter that the petitioner received from his brother, which he himself submitted to the judge at the individual hearing in this case. In that letter, the brother provides that he had been accosted by three men who misperceived the brother as the petitioner, given facial symptoms and similarities. The judge held that the petitioner's testimony, however, was that his brother had been accosted as early as 1992. But here again, the immigration judge misconstrues the petitioner's testimony. The petitioner testified that in 1992, one of his brothers had been accosted by these individuals. In fact, the judge himself acknowledged during the proceedings that the petitioner had more than one brother. The petitioner's testimony, in fact, was that he had four brothers, yet the immigration judge failed to recall during his decision that the petitioner had more than one brother who had been accosted by the individuals that were looking for him. Lastly, the immigration judge provides that the petitioner failed to disclose the stabbing incident at his political asylum interview. And on that basis, the immigration judge found that he was just simply not credible. However, this Court has held that an omission is not the equivalent of an inconsistency. There is no equivalence there. Well, didn't he didn't it wasn't the concern that there was no mention of any incidents of persecution during that initial interview? You're quite right, Judge. The Board of Immigration Appeals, as one of its reasons, provides that the kidnapping incident was also not mentioned. But that's incomplete. That's not mentioned in the at the interview. At the interview, yes, Your Honor. At the asylum interview. At the asylum interview, yes. But I submit to the Court that that was a complete error. We don't know what took place at that asylum interview because we don't have a transcript. There is absolutely no record, Your Honor. We don't even have the notes or the notations of the asylum interview. Isn't that correct? That is absolutely correct. I mean, I looked through the record. I couldn't find it. Usually we see either a transcript of the asylum interview or we see notes or a worksheet or something, and there's nothing in this file. Yes, Your Honor. You're completely right. So there's no way for this Court to look to that interview to determine exactly how that interview was conducted. Was he asked about the incident? Was he given the opportunity to explain that incident? All that we know is that he testified at the hearing that he was not asked about that particular incident. The only discrepancy that causes me some trouble in thinking about this case is that at one point he said that his friend had been stabbed but was fine, and then later he said he was not fine and he was hospitalized. I don't recall whether he actually died from this or not, but that seemed to strike me as an inconsistency. Yes, Your Honor. And that is the second inconsistency which was noted by the Board. But here's the problem, Your Honor. In this particular case, the statement by the Petitioner at the hearing was that after two or three days he was fine. In his very next statement, he says, I was also afraid that they would also kill me. Immediately after he said that, and then later on in the testimony, he says, after two days, the individual had died. And so here, what he attempted to explain to the Court, in which the immigration judge accepted, it's true, because the judge did find that he had testified that the  he had died after those two days as a result of the injuries. And that is also in the record. If you look at that particular section in the record where he says that he was fine after two or three days, or after two days he was fine, immediately thereafter, his very next statement is, I was also afraid that they, too, would kill me. And so clearly, I believe that that clarifies that discrepancy. And if you further read on the record, you'll find that he specifically stated that after two days, the individual had been murdered. So it was a translation mistake? It could have been a translation mistake, Your Honor, although I think that in this case, it was just simply, in my opinion, an unwillingness to really hear the petitioner testify about the entire incident. Conclusions were being drawn from simple statements. From one statement, the immigration judge appears to be making credibility determinations without taking the context of the entire record before making that decision. And so The only thing he was, he was, what he could have been saying was that he was fine, he wasn't dead right away. He was fine for a couple of days, but then he died. Yes, Your Honor. And that is the testimony. And if you read the record in its entirety, that is exactly what the petitioner, with the That seems to be the way the I.J. took the testimony. Yes, that's absolutely right, Your Honor. And that's the way that government counsel at the hearing also took the testimony, as the immigration judge did not rely on that one factor in making its adverse credibility finding. It was the board that It was the board, Judge, and I would again urge the Court to consider that the board mentioned that he had failed to disclose the kidnapping incident at the interview, but there's nothing in the record that points to that. The page cited by the board regarding that failure relates to the stabbing incident, not to the kidnapping incident. Government counsel in its brief doesn't even argue that the petitioner failed to disclose the kidnapping incident because there's nothing there to show that or even to suggest that he failed to disclose that particular incident. And so therefore, Judge, on that basis, we submit to the Court that there was insubstantial evidence in this case to find that the petitioner was not credible during his testimony. Another crucial part here, Your Honor, I see I'm running out of time, is the past persecution. I would submit to the Court that in this particular case, past persecution was on account of his political opinion. This is not just a case where the man witnessed the murder and thereafter was persecuted as a result of that witness. He was persecuted because he was actively involved in his party. He had been kidnapped exactly three months prior to that offense. He had also been told and threatened not to appear at any of these additional interviews, excuse me, at these party meetings, and yet he continued in his involvement. The judge also failed to realize that he had been under a lot of pressure as early as 1989 all the way until 1991. And most important of all, the judge failed to realize that here we have a petitioner who was present at a party meeting where an individual was stabbed even after he had been warned not to continue in his operations. Thank you, Your Honor. I'll reserve my one minute for everybody. Thank you, Your Honor. Good morning. May it please the Court. My name is Isaac Campbell and I represent the United States in this matter. Your Honor, this case is about credibility and the petitioner's failure to meet his burden in establishing eligibility for asylum and withholding of removal. The pertinent issue before this Court is whether it does not. This Court must deny the instant petition for review because petitioner's requests for relief are precluded at numerous levels, any one of which is sufficient to warrant a finding that substantial evidence supports the immigration judge and board determinations. And before addressing the deficiencies in detail, here's a quick outline of the deficiencies. First, the petitioner failed to establish eligibility for asylum or withholding of removal because the petitioner was not credible. He failed to show the petitioner's treatment that he suffered in Bangladesh rose to the level of persecution, and given changed country conditions, he has no well-founded fear of future persecution if returned to Bangladesh. He also now, petitioners now also raise a slew of arguments to address these issues that were not raised in their BIA appeal. Accordingly, this Court lacks jurisdiction to consider such arguments as petitioners fail to exhaust administrative remedy. Finally, while I will discuss why petitioner's arguments are not availing, even if they were, petitions offer at best an alternative explanation of events. This does not meet the standard of review needed to prevail in this Court. That is, petitions offer nothing that would require this Court to conclude that petitioners are eligible for asylum or withholding of removal. Now, to address those issues in a bit of detail, starting first with credibility. Kagan. Let me ask two sort of procedural questions quickly. I noticed that on the briefs, they were signed by a Thomas Raglan. Yes. Was he with the Office of Immigration Litigation? He was, yes. And are you also with the same office? Yes. I'm a detail lead to that office, yes. But you came from somewhere else in the government? Well, I'm with the Department of Justice. I'm with the Office of Immigration Litigation now, yes. We've been hearing that the Office of Immigration Litigation has been sort of outsourcing to the U.S. attorneys and to other people the actual arguments and briefing. Is that happening? Yes. Actually, that's not the case here in this matter. I'm actually working at the Office of Immigration Litigation. Now, that is where I am assigned. Okay. And the other procedural sort of novelty that occurred to me about this case is that the immigration judge did find Kazi not credible. Yes. And he gave his reasons. And he was the one who observed Kazi and understood the context and the logistics of the testimony as it was happening. And then the BIA looks at the cold record and says, oh, no, but we find this is inconsistent with that and that is inconsistent with that. How are we supposed to defer to that kind of a finding by the BIA? I mean, I can understand deferring to some of this demeanor aspect of the IJ, but the BIA is not doing anything differently than what we do. I think it's two things, Your Honor. First, the board adopted and affirmed the findings of the immigration judge. So in essence, they said that the immigration judge is correct in that determination. But also, reviewing the records, they said in addition to these credibility issues, here are a couple of other issues that show that petition would not be credible. And I think for this panel, I think that in looking at the cold record, and I will address that, that I will address some of the petitioner's arguments, it does show that the petitioner was not credible. If you look at it in this context, addressing both the issues that the immigration judge and the board found, it shows that the petitioner was not credible. First, when the petitioner filed the asylum application, the issue of the purported torture that he suffered, the murder of his friend, these things were not present in the asylum application. During his oral interview, his oral asylum interview, he did not mention that his friend was murdered. Now, as we know that because I don't know what questions he was asked. We know that he did not at least raise this issue of the murder of his friend because in the administrative record at pages 90 to 91, he was asked about that in the fact that he omitted the murder of his friend from his asylum interview. And the petitioner Well, you agree in the record here, we don't have, we don't know what took place at the asylum interview. I agree, Your Honor. We don't have a transcript. I agree, Your Honor. We don't have the notes. We don't have the We don't have the worksheet. I agree. I agree with that, Your Honor. But what we do have is the lead petitioner's admission that he did not raise that issue. And so we are not simply looking at a blind record where we have to guess. We have the lead petitioner's admission that this was not raised. And this is relevant because Was he represented by counsel at the asylum interview? I don't believe he was. I believe that the asylum interview is his standard to let the, to let an alien know that they, this is sworn testimony. But I don't believe that he was represented by counsel. However, this is important because in the general context, as we look at first the fact that it wasn't raised in the asylum application, two, even if he raises this issue that somehow he did not understand English or that that was an issue, when he is now conversing with the asylum officer, by his own admission, he did not address this issue. So that's the second point. When he did obtain counsel, he did not revise his asylum application at all to include some of these issues. When he gave his testimony, look at Is that necessary? It's not necessary, but I mentioned this in the context of addressing the credibility. And when you look at these issues in the entire context, it shows that the immigration judge and the board had specific Do we know what point he obtained counsel? I believe the record Right before the immigration hearing? Was it long before the immigration hearing? I'm not sure. Asylum hearing, I mean. I'm not sure exactly when he obtained counsel. But what is clear is that he had counsel at the evidentiary hearings and thus could have supplemented it. It's just, it is another issue where it presents a particular problem with his At the asylum hearing, his counsel walked him through. And even with that, that presents a problem. But if you look at the fact that stuff is missing, even looking at his testimony, it's a problem. He now clearly has counsel. For example, when he talked about the stabbing with a friend, on page 79 of the record, the judge asked him, now wait a minute, your friend was stabbed. He answers, yeah. The judge asked him, did he survive or was he dead? And petitioner says, no, after two or three days, he was fine. Now petitioner I mean, petitioner's counsel argues that he then says later that they were going to kill me also. If you look at the record, what happens is after petitioner says, after two or three days, he was fine, in response to a specific question about, did he survive or was he dead? That is his answer. Well, look at this. You know, right after the judge asked those series of questions, his counsel then asked the next question, which is, what did he do after that when you saw them kill the person? And that would be my point now. The answer is then I scared. I scared. I mean, it's very difficult to follow this transcript. And I run away from these places. And somebody, some of the person give me shelters. And after sometimes I try to hide from the area because I know they will search me and they may kill me also. Now, I would submit, Your Honor, that first of all How do you explain all this? The I.J. didn't seem to have any problem with that. I mean, it's understood it to be that he was, that the fellow was dying. Well, I think that if you look at the fact that he makes one statement, his counsel then leads him and says he was killed. He says that, and then says later that he died at another point in the testimony. I think in looking at the fact that when the fact that it's missing from the asylum application, it's not raised in the oral interview, that he makes one  statement, that looking at those issues, it presents a specific cogent reason for the immigration judge and the board to have found the petitioner was not credible. And that the issue here is even with the alternative explanation You think the I.J. had an obligation to tell him, ask him to explain this discrepancy? I think that The I.J. never said, look, you said one thing and now you're saying another thing. Explain this. How could this be? I think that with this, when you look at the issue in its entire context where petitioner offers, doesn't offer the same story or that he's not forthcoming with this information essential to his claim and then there are contradictory statements, while certainly the I.J. could have done that, I think looking at it in the context, there's still certainly specific cogent reasons for the credibility determination and petitioners have not showed that they would be compelled to do otherwise. I see that I'm running low on time. I also would like to just quickly address some of the other issues. Even after the issue of credibility, petitioner has to show that the, there was, the instance he suffered rose to the level of persecution. That the single incident of detention with assault is not enough to rise to the level of persecution. I can't recall, but did the I.J. make a specific, you know, an alternative finding that even if he's credible, I find that he has not suffered past persecution? No, the I.J. did not make that. The I.J. simply said the petitioner had not met his burden in determining and establishing credibility. So if we were to, assuming that we were to agree with the petitioner that substantial evidence does not support the I.J.'s credibility finding and that compelling a contrary finding, wouldn't it just be appropriate for us to remand the BIA to make that persecution finding in light of credible testimony? It would certainly be appropriate to remand rather than to reverse the decisions. But because there are numerous other issues that would preclude such a finding, I think that the petitioner's claim should be dismissed. I'm assuming my time is running out, so if I may wrap up. That in addition to the petitioner's failure to establish that it was persecution, the record evidence clearly shows that there are changed country conditions, and the petitioner failed to exhaust his administrative remedy in raising many of the arguments that he brings forth now in saying that there were language difficulties and misinterpretations by the immigration judge. And that finally, even if all of that were accepted, petitioner's arguments Well, somebody had some trouble here. Maybe it was a transcriber who had trouble transcribing the tape. It's difficult to read this transcript. You have to read it very slowly. It took a lot of time to read this transcript. It's difficult to follow. Certainly, Your Honor. Something was going on here. Certainly, Your Honor. I do not argue that the transcript may be difficult to follow. However, because in looking at the issue as a whole and in that context, there are still specific reasons for the lead petitioner was not credible, because there was persecution, because the record evidence clearly shows there are changed country conditions, because petitioner did not raise these issues before the Board of Immigration Appeals, and finally, because at best what petitioner offers are alternative explanations in saying that, well, perhaps this is true and, you know, this could account for that. That is not sufficient to require that this Court find that petitioner is eligible for asylum and thereby warranting reversal. All right. Thank you, counsel. You're well over your time. Thank you. Thank you. Your Honor, first let me respond to Government Counsel's argument about raising issues on appeal for the first time. We have not raised new issues on appeal. We're not arguing that this case should be remanded for some English deficiency. I'm simply making reference to facts already present in the record that I'm asking the Court to consider in making its adverse credibility finding. With regards to the asylum interview, petitioner was not represented by counsel at that interview. The application for asylum was not prepared by counsel either. And this Court has previously held that failure to state a particular claim on the asylum application is not sufficient to find that the individual was simply not credible. This is not like the Alvarez-Santos v. Ashcroft case, where the individual provided his direct testimony, and only after taking a recess and speaking to counsel did he then come back on a record and testify about a critical event. Here, from the onset of his case, during direct examination, he provided such information. And lastly, regarding this stabbing incident, I'd like the Court to consider page 92 of the record, where after he states that the individual had survived one or two days, after he states that he was the – that he also feared being killed by these same individuals, at page 8 – at the record, page 92, lines 16 to 17, he  Thank you, Your Honor. Thank you, counsel. Cosby v. Alberto Gonzales is submitted. The next case on the docket, Acidicimon v. Alberto Gonzales.
judges: Wardlaw, Paez, Beistline